```
Robert D. Vogel (SBN 063091)
Christopher A. Gelpi (SBN 288443)
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430
VogelR@jacksonlewis.com
Christopher.Gelpi@jacksonlewis.com

Attorneys for Defendant
NEW AVON LLC
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERLA MAGENO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>NEW AVON LLC., a Delaware limited liability company; and Does 1-10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**DEFENDANT NEW AVON LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**<br><br>[Filed concurrently with Civil Case Cover Sheet, Notice of Interested Parties, Declarations of Christopher A. Gelpi and New Klebanoff and Exhibits Thereto, Corporate Disclosure Statement and Notice of No Related Cases] |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PERLA MAGENO AND HER COUNSEL OF RECORD HEREIN:

PLEASE TAKE NOTICE Defendant NEW AVON LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1441 and 1446 to remove this action from the Superior Court of California in and for Los Angeles County to this Court.

The following statement is submitted in support of this removal:

## TIMELINESS OF REMOVAL

1. On October 30, 2017, this Action was filed in the Superior Court of the State of California, County of Los Angeles ("Los Angeles County Superior Court") entitled <u>Perla Mageno v. New Avon LLC and Does 1-10, inclusive</u>, Los Angeles Superior Court Case No. EC067535 (the "Action").

2. Plaintiff's complaint ("Complaint") in the Action alleges a cause of action for violation of the Unruh Civil Rights Act ("UCRA"), California Civil Code Section 51 et seq. Declaration of Christopher A. Gelpi ("Gelpi Declaration"), ¶ 2; **Exhibit A**.

3. On or about October 30, 2017, Plaintiff filed a Summons and Civil Case Cover Sheet in Los Angeles Superior Court in the Action. Gelpi Declaration, ¶ 3; **Exhibits B and C**.

4. On or about October 30, 2017, the Los Angeles Superior Court issued a Notice of Order to Show Cause Re Failure to Comply with Trial Court Delay Reduction Act, Notice of Case Management Conference and Notice of Case Assignment in the Action. Gelpi Declaration, ¶ 4; **Exhibits D, E** and **F**.

5. Defendant's agent for service of process in the State of California is CT Corporation ("CTC"). On November 16, 2017, CTC was served with a copy of the Summons and Complaint in this Action. Declaration of New Klebanoff ("Klebanoff Declaration"), ¶ 4; **Exhibits A** and **C**.

6. Defendant believes no other parties have been named or served and no other party has appeared in the Action. Gelpi Declaration, ¶ 5. *See also* 28 U.S.C. § 1446(b)(2)(A) ("all defendants who have been properly joined and served must join in and consent to the removal of the action").

7. Defendant had thirty (30) days to remove this Action after being served on November 16, 2017 with the Complaint. 28 U.S.C. § 1446(b); *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011).

8. Prior to the filing of Defendant's Notice of Removal, counsel for Defendant reviewed the Los Angeles Superior Court's online docket regarding the Action. Based on

its review of the docket and to the best of its knowledge, the foregoing documents identified as **Exhibits A** through **F** constitute all of the process, pleadings, orders and other documents served on Defendant and/or filed in the Action in Los Angeles Superior Court. Gelpi Declaration, ¶ 6.

9. Pursuant to 28 U.S.C. sections 1441, et seq. and 1391(a), venue of this case properly lies in the United States District Court for the Central District of California, Western Division, because Plaintiff's Complaint was filed in state court in that district and is the judicial district in which the Action arose.

10. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies a copy of this Notice of Removal and all supporting papers will be served on Plaintiff's counsel and filed with the Clerk of the Los Angeles Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 have been satisfied.

## REMOVAL BASED ON DIVERSITY JURISDICTION

11. This case is a civil action of which this court has diversity jurisdiction under 28 U.S.C. section 1332 and is one that may be removed to this court by Defendant pursuant to 28 U.S.C. sections 1441(a) and (b) in that it is a civil action between a citizen of one (1) state and citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. For these reasons, this court has original jurisdiction over this Action. 28 U.S.C. §§ 1332, 1441(a) and (b).

12. Plaintiff is a resident of California. [*See* Complaint, ¶ 7.] For diversity purposes, a person is a "citizen" of the state in which he/it is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *See State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). Defendant therefore is informed and believes Plaintiff is, and was at all times relevant to the Action, a citizen of the State of California within the meaning of 28 U.S.C. section 1332(a).

Case No.:                  NOTICE OF REMOVAL

13. Pursuant to 28 U.S.C. section 1332(c)(1), a corporation is a citizen of any state in which it is incorporated in addition to the state in which it maintains its principal place of business.

14. The United States Supreme Court has specifically recognized a corporation's "principal place of business" is its "nerve center" or the state where its high level officers direct, control and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1186 (2010). In practice, a corporation's "nerve center" is generally its corporate headquarters provided it is the actual center of direction, control and coordination and is not simply an office where board meetings are held. *Id.* at 1192. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control and coordination of the company and will no longer weigh corporate functions, assets or revenues in each state. *Id.*

15. Plaintiff correctly alleges in the Complaint Defendant "is a company formed in Delaware, and has its principal place of business in New York, New York." [*See* Complaint, ¶ 9.] Both at the time Plaintiff filed the Complaint and presently, Defendant's corporate headquarters was and are located in New York, New York. Klebanoff Declaration, ¶¶ 5, 6.

16. Both at the time Plaintiff filed the Complaint and presently, Defendant's corporate officers were and are based for purposes of citizenship in New York, New York. *Id.*

17. Defendant's corporate officers are not based in California and it does not engage in primary, fundamental operations in California. Klebanoff Declaration, ¶¶ 5-7.

18. Defendant's corporate officers direct, control and coordinate its services and overall business operations for its United States business. Klebanoff Declaration, ¶ 6.

19. Therefore, based upon the location of its officers and directors, Defendant's "nerve center" and principal place of business is in New York, New York.

20. Accordingly, under 28 U.S.C. section 1332(c)(1), Defendant is not a citizen of the State of California and complete diversity of citizenship exists between Plaintiff and Defendant within the meaning of 28 U.S.C. section 1332.

21. The only other defendants named in the Complaint are fictitious parties identified as "DOES 1-10" whose citizenship must be disregarded for the purposes of removal. 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

22. Thus, there are no other defendants to join in the removal of the Action to this court.

## AMOUNT IN CONTROVERSY

23. The amount in controversy in this case exceeds $75,000, exclusive of interest and costs. While Defendant disputes any liability in this case, a review of the damages potentially recoverable under the Unruh Act and Plaintiff's theory of liability, which involves repeating claims and alleged ongoing violations by Defendant, demonstrates the amount of monetary damages sought by Plaintiff in the Complaint satisfies the "good faith" requirement purposes of removal under 28 U.S.C. § 1446(c)(2).

24. Plaintiff's Complaint expressly limits the cost of injunctive relief sought to $50,000 or less and the amount of damages sought to $24,999.00. [*See* Complaint, ¶¶ 48, 49.] However, a "plaintiff cannot . . . lower the amount of monetary relief requested in an attempt to evade federal jurisdiction." *Steele v. Grainger, Inc.*, 2013 U.S. Dist. LEXIS 81381, at *14 (S.D. Cal. 2013); *see also Schuyler v. Morton's of Chi., Inc.*, 2011 U.S. Dist. LEXIS 10130, *6-8 (C.D. Cal. 2011) (in denying plaintiff's motion to remand, holding that, although plaintiff had "expressly stated that the amount in controversy is less than the jurisdictional minimum pursuant to 28 U.S.C. § 1332(a)," defendant demonstrated the amount in controversy exceeded $75,000 by aggregating plaintiff's claims for relief).

25. The face of the Complaint alleges an amount in controversy of at least $74,999 plus attorneys' fees. [*See* Complaint, ¶¶ 47-50.] Because the Unruh Civil Rights Act provides for the recovery of attorneys' fees (Cal. Civ. Code § 52(a)), and it is entirely

reasonable if not legally certain that Plaintiff has incurred over $1.00 in attorneys' fees to date, the total amount in controversy exceeds the jurisdictional limit of $75,000.

26. In determining whether the amount in controversy exceeds $75,000.00, the court must presume Plaintiff will prevail on all her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002), *citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes "plaintiff prevails on liability") and *Angus v. Shiley Inc.* 989 F.2d 142, 146 (3rd Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Moreover, the argument and facts set forth herein appropriately may be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.* 281 F.3d 837, 840, n.1 (9th Cir. 2002), *citing Willingham v. Morgan* 395 U.S. 402, 407 n.3 (1969).

27. The amount in controversy may include general and special compensatory damages and attorneys' fees recoverable by statute. *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert denied, (1982) 459 U.S. 945 (attorneys' fees may be taken into account to determine jurisdictional amount). The court may examine the nature of the action and the relief sought, including attorneys' fees. *See e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (attorneys' fees in individual employment discrimination cases often exceed damages). The Ninth Circuit has made clear that statutory attorneys' fees are included as a basis for determining the jurisdictional amount in controversy. *See Galt, supra*, 142 F.3d at 1155-56. In determining whether the amount in controversy meets the jurisdictional minimum, attorneys' fees are calculable beyond the time of removal. *Simmons, supra*, 209 F.Supp. at 1035.

28. Without conceding Plaintiff will prevail on her claims or could recover damages in any amount whatsoever, it can be readily ascertained the amount in controversy in the Complaint exceeds the requisite $75,000, exclusive of interest and costs. *See* 28

U.S.C. § 1332(a). In this Action, Plaintiff seeks: (1) an injunction enjoining Defendant from further violations of the UCRA with respect to its website www.avon.com; (2) an injunction requiring Defendant to take the steps necessary "to make www.avon.com readily accessible to and usable by blind and visually-impaired individuals"; (3) "statutory minimum damages of $4,000 per violation" pursuant to California Civil Code section 52(a); (4) "attorneys' fees and expenses pursuant to all applicable laws including, without limitation, [California] Civil Code [section] 52(a);" (5) pre-judgment interest; (6) costs of suit; and (7) other and further relief as the Court deems just and proper. [*See* Complaint pg. 14:9-22.]

29. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cohn v. Petsmart Inc.*, 281 F.3d 837, 840 (9th Cir. 2002), *quoting Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). The "cost of complying with an injunction" is properly considered in calculating the amount in controversy for purposes of removal. *Gonzales v. Carmax Auto Superstores*, 840 F.3d 644, 648-49 (9th Cir. 2016), *citing Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 at n3 (9th Cir. 2000). In the context of single-plaintiff cases, the Ninth Circuit has adopted an "either viewpoint" rule such that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce." *In re Ford Motor Co./Citibank (South Dakota)*, NA, 264 F.3d 952, 958 (9th Cir. 2001) (observing how the 9th Circuit "rejected the 'plaintiff-viewpoint' rule, which states that courts attempting to determine the value of a claim for purposes of the amount in controversy requirement should look only to the benefit to the plaintiff, rather than to the potential loss to the defendant."), *citing Ridder Bros, Inc. v. Blethen, et al.*, 142 F.2d 395, 398 (9th Cir. 1944) (noting "if the value of the thing to be accomplished [is] equal to the dollar minimum of the jurisdictional amount requirement to anyone concerned in the action, then jurisdiction [is] satisfied."). Accordingly, to the extent the cost of remedying the alleged issues

Case No.: NOTICE OF REMOVAL

1  with Defendant's website, combined with Plaintiff's alleged monetary damages, exceeds
2  $75,000, the amount in controversy requirement is met.

3      30.   Plaintiff attempts to limit the cost of her injunctive relief to $50,000 in an
4  effort to evade Federal jurisdiction. [*See* Complaint, ¶¶ 48-49.] However, implementing
5  the changes sought in Plaintiff's complaint would significantly exceed this amount. The
6  cost of compliance with Plaintiff's request alone would meet the minimum amount in
7  controversy for removal. Plaintiff alleges "multiple accessibility barriers for blind or
8  visually impaired people", including inability to access the "store locator," "unlabeled links
9  and graphics," "cursor traps and links that were not functioning or were mislabeled." [*See*
10 Complaint, ¶ 32.] On information and belief, due to the complexity and labor intensive
11 nature of assessing a website (which includes examining the website at the code level), the
12 cost of performing an initial accessibility audit based on Plaintiff's complaints will be
13 excessive. Defendant would incur subsequent costs to implement changes to the Website
14 to develop a new "Store Locator" feature to implement or revise accessibility features in
15 response to Plaintiff's claims.

16     31.   The Unruh Act allows for recovery of a statutory minimum of $4,000 "for
17 each and every offense" of its provisions. Cal. Civ. Code § 52(a). "Each offense is each
18 time the plaintiff visits the non-compliant place of public accommodation or each specific
19 instance in which the plaintiff is deterred from attempting to visit." *Molski v. Rapazzini*
20 *Winery*, 400 F. Supp. 2d 1208, 1211-1212 (N.D. Cal. 2005), citing *Arnold v. United*
21 *Artists Theatre Circuit*, Inc. 866 F. Supp. 433 (N.D. Cal. 1994); Cal. Civ. Code § 55.56(b).

22     32.   Plaintiff alleges she has experienced violations "on several separate
23 occasions" when visiting Defendant's website. [*See* Complaint, ¶¶ 29-30.] She also alleges
24 she "continues to be deterred on a regular basis" from accessing Defendant's website and
25 its brick-and-mortar locations. [*See* Complaint, ¶ 8.] Specifically, Plaintiff alleges:

26     i.   "Plaintiff has visited Defendant's website on several separate occasions using
27        the JAWS screen-reader." [*See* Complaint, ¶ 29.]

  ii. "During Plaintiff's separate visits to Defendant's website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public on Defendant's website. Due to the widespread access barriers Plaintiff encountered on Defendant's website, ***Plaintiff has been deterred, on a regular basis***, from accessing Defendant's website. Similarly, the access barriers Plaintiff encountered on Defendant's website have deterred Plaintiff from visiting Defendant's brick-and-mortar locations." (emphasis added) [*See* Complaint, ¶¶ 29-31.]

  iii. "Plaintiff, as a result of the barriers on the Defendant's website, ***continues to be deterred on a regular basis*** from accessing Defendant's website. Likewise, based on the numerous access barriers Plaintiff has been impeded from the full and equal enjoyment of goods and services offered in connection with Defendant's brick-and-mortar locations." (emphasis added) [*See* Complaint, ¶ 36.]

  iv. "Having made ***many attempts*** to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people." (emphasis added) [*See* Complaint, ¶ 39.]

33. Further, Plaintiff seeks "statutory minimum damages of $4,000 per violation..." [*See* Complaint, pg. 14:16-17.] According to Plaintiff, she has "visited Defendant's website on several separate occasions…" and "has been deterred, **on a regular basis**, from accessing [it]." (emphasis added) [*See* Complaint, ¶¶ 29, 31.] Accordingly, the Complaint alleges ***at least*** $24,999 in monetary damages.

34. Since Plaintiff seeks a minimum of $4,000 per violation for "several" regularly occurring violations caused by Defendant's website, Defendant submits a reasonable estimate of damages recoverable for statutory minimum damages based on Plaintiff's allegations is ***at least $24,999***. [*See* Complaint, ¶¶ 30-31, 34 and 44.]

9

Case No.:                     NOTICE OF REMOVAL

35. In addition, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (recognizing that attorneys' fees provided by statute are properly included in evaluating the amount in controversy); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 942-943 (9th Cir. 2001) (holding attorneys' fees are properly including in calculating the amount in controversy for purposes of determining removal jurisdiction. Such fees are calculable beyond the time of removal. *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002).

36. Plaintiff seeks recovery of attorney fees in this case "pursuant to all applicable laws including, without limitation, California Civil Code [section] 52(a)." The "Unruh Act . . . authorize[s] a prevailing plaintiff to recover reasonable attorneys' fees, expenses, and costs." *Vogel v. Rite Aid Corp.*, 2014 WL 211789, at *12 (C.D. Cal. Jan. 17, 2014); 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). Attorney fees in individual cases often exceed damages. *See Simmons, supra*, 209 F.Supp.2d at 1035; *Flannery v. Prentice*, 26 Cal.4th 572, 577 (2001) (discussing award of $1,000,000 in attorney fees where plaintiff recovered $250,000 for statutory discrimination action against employer). Significantly, courts in the Central District have held that estimated fees during the litigation may be considered as part of the amount in controversy. *See, e.g., Oganesyan v. AT&T Mobility Servs., LLC*, 2014 U.S. Dist. LEXIS 132126 *7 (C.D. Cal. Sept. 18, 2014) (holding that where an underlying statute permits recovery of attorneys' fees, "the Court does not merely consider those fees which have already been incurred; rather, it looks to the amount that can be reasonably estimated" when determining the amount in controversy).

37. To date, Plaintiff has incurred fees preparing, filing, and serving the Complaint. Applying even the most conservative estimate of attorneys' fees, Plaintiff has undoubtedly incurred in excess of $1.00 in fees at the time of removal. Because the face of the Complaint alleges at least $74,999 in damages, plus fees, the combined alleged damages and expected attorneys' fees in this case exceed $75,000.

Case No.:  NOTICE OF REMOVAL

38. Although Plaintiff has already incurred sufficient fees to satisfy the jurisdictional minimum, an attorneys' fee award alone in this case could easily meet or surpass $75,000 through trial. Indeed, assuming an hourly rate of $300, Plaintiff's counsel need only recover fees for 250 hours of work to satisfy the jurisdictional minimum. Based on other accessibility litigation, it is reasonably plausible that the expected attorneys' fees in this case will exceed $75,000 through trial (though Defendant disputes all claims for damages and attorneys' fees). *See Chapman v. Pier 1 Imps.* (U.S.), Inc., 2017 U.S. Dist. LEXIS 37257, *12 (E.D. Cal. March 15, 2017) (attorneys' fees awarded to Plaintiff in the sum of $312,253).

39. Including the value of injunctive relief sought, statutory minimum or actual damages for alleged ongoing violations of the UCRA and the amount of attorneys' fees placed in controversy in this Action, the aggregate amount in controversy in this Action reasonably exceeds the $75,000 jurisdictional minimum required for purposes of removal. Accordingly, the amount in controversy in this case exceeds the requirement under 28 U.S.C. §1332(a).

## VENUE

40. For the purposes of removal only, venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1441(a) and 1332(a) because the Complaint was filed in state court in this district and this is the judicial district in which the Action was initially pled.

## NOTICE TO COURT AND PARTIES

41. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, Western Division, written notice of the removal will be given by the undersigned to counsel for Plaintiff and a copy will be filed with the Clerk of the Superior Court for the State of California, County of Ventura.

42. WHEREFORE, for the foregoing reasons, this Court has original jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a) and removal of the Action to this court is proper pursuant to 28 U.S.C. § 1441.

Case No.:   NOTICE OF REMOVAL

43.    Accordingly, Defendant respectfully requests this Action now pending against it in the Superior Court for the State of California in and for the County of Los Angeles be removed therefrom to this court.

Dated:  December 15, 2017

JACKSON LEWIS P.C.

By: _____
Robert D. Vogel
Christopher A. Gelpi

Attorneys for Defendant
NEW AVON LLC

4843-1391-7784, v. 1